AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

for the

District of Colorado

In the Matter of the Seizure of
*(Briefly describe the property to be seized)*
JP Morgan Chase, account #3881912303, in the name Alejandro Castro

Case No. 12-sw-05288-KMT

## APPLICATION FOR A WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ______ District of Colorado is subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6) and ( *(describe the property)*:

JP Morgan Chase, account #3881912303, in the name Alejandro Castro

The application is based on these facts:
See Affidavit attached hereto and hereby incorporated by reference

☑ Continued on the attached sheet.

s/David L. Crosby
*Applicant's signature*

Special Agent David L. Crosby, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 03, 2012 3:38 pm

*Judge's signature*

City and state: Denver, Colorado

KATHLEEN M. TAFOYA, US Magistrate Judge
*Printed name and title*

# AFFIDAVIT

This affidavit is made in support of applications for:

1) A criminal complaint charging **Alejandro Castro** and **Crescencio Felipe Castro Nieblas** with conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. 846; and
2) A seizure warrant for JP Morgan Chase, account #3881912303, in the name Alejandro Castro, pursuant to 21 U.S.C. 881(a)(6) and (b).

Your affiant, David L. Crosby, has been employed as a Special Agent of the United States Department of Justice, Drug Enforcement Administration for approximately twenty one years. I am presently assigned to the Denver Division Office, Front Range Task Force Group 2 of DEA. Since joining DEA, I have participated in numerous investigations of individuals and organizations for violations of the federal narcotics laws. I have attended narcotic schools and seminars held within and outside the metropolitan Denver area relating to narcotics trafficking and the behaviors and methods of traffickers. I have received training in the methods, devices, routines and customs common to persons and organizations which illegally import and distribute controlled substances. As a result of this training and experience, your affiant is familiar with the manner in which controlled substances are imported, manufactured and distributed in the Denver, Colorado metropolitan area. Moreover, from experience and training, I know that narcotics traffickers use cellular telephones in the belief that by so doing, they can avoid detection by, and thwart the efforts of, law enforcement to identify their activities and seize their drugs and/or assets. I also know that drug traffickers frequently have access to several cellular

telephones and that they periodically use newly acquired cellular telephones, all in an effort to avoid detection and thwart law enforcement efforts.

Your affiant is an "investigative or law enforcement officer of the United States" within the meaning of Section 2510 (7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to investigate and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

On February 6, 2011, the Utah Highway Patrol stopped a Nissan, bearing Colorado registration 854UJN, traveling eastbound on Interstate 70, near Richfield, Utah. The driver and sole occupant of the vehicle was Rigoberto Reynaga Torres. Torres consented to a search or the vehicle and approximately five pounds of methamphetamine was located in a hidden compartment under the trunk of the vehicle. The vehicle was registered to Jose Luis Rivas at 5912 Conservation Drive, Frederick, Colorado. Torres was arrested and detained.

On February 17, 2011, Rigoberto Reynaga-Torres was transported from the Beaver County Correctional Facility to the Washington County Correctional Facility. During the transport, Torres advised that he wanted to talk. Torres was then advised of his rights under Miranda and then interviewed. Torres advised that Alejandro Castro was responsible for setting up the delivery of the methamphetamine. Torres had previously worked with Castro at Auto Zone, located at 19920 Paramount, Downey, California. Castro knew that Torres had turned in a two week notice to quit at Auto Zone in January of 2011. Torres has known Castro for about seven years and described him as being approximately 25 years old, 5’7” tall, with a heavy build. Torres advised that Castro told him to deliver the methamphetamine to Jose Rivas’s residence upon arriving in the Denver, Colorado area. Torres advised that Castro told him the drugs were somewhere around one of the rear tires, but Torres stated that he was not given the exact

location. Torres expected to be paid $2,000 for the delivery and had been advised that there was approximately two pounds of methamphetamine. Castro's cousin, whose name was unknown to Torres, brought the black Nissan Altima to Torres on the evening of February 5, 2010. Investigators asked if they could look at the data within Torres's cellular telephone. Torres consented and advised that both Castro and Rivas were in his contacts list. Torres advised that Castro's telephone number was listed under "Alex" and Rivas's telephone number was listed under "Jose." In the contacts list, investigators found "Alex Castro" and two phone numbers: (562) 318-7655 and (323) 707-9114. They also found "Jose" listed with a telephone number of (720) 413-5611. Torres advised that Castro goes to Mexicalia, Mexico, almost every weekend to visit family, but Torres was not sure if that is where Castro obtains narcotics.

The methamphetamine seized from Torres was analyzed and found to be 1920.5 grams of 100% pure methamphetamine. Recovered from the packaging were nineteen latent prints, all of which belong to Jose Luis Rivas.

Call-detail records for (720) 413-5611, the phone Torres said was used by Rivas, indicate that the phone was subscribed to Jose L. Rivas at 5912 E. Conservation Drive, Frederick, Colorado. These records showed 37 calls to/from (323) 707-9114 (one of the two phones associated with Alex Castro) between January 7, 2011 and February 7, 2011. Telephone number (323) 707-9114 was subscribed to Alejandro Castro at 8127 Shadyside Avenue, Whittier, California. Following the stop and arrest of Torres, calls between (720) 413-5611 and (323) 707-9114 ceased.

On May 31, 2011, at approximately 2:30 pm, Rigoberto Reynaga Torres was interviewed again regarding his knowledge of the drug trafficking activities. Torres said he delivered drugs from Castro to Rivas in Colorado on one occasion prior to his arrest. Torres said he was told to

deliver a black Nissan, registered to Rivas, to Rivas in Colorado. Torres stayed at a motel in the Denver area and met Rivas **a**t the motel. Torres said he was paid close to $2000 for this trip. Torres said that he never saw the drugs, but explained that Castro and Rivas referred to the drugs as "Hielo," which translates from Spanish to English as "Ice." Torres said he drove straight through from California to Colorado, met Rivas at the motel the next morning, and then went to Rivas's residence. Torres said that prior to his arrest, Castro and Rivas asked him to make the trip again and he agreed. Torres said that he received the same car from Castro, who said that "yellow" was in the car. When he left, Torres said he was not sure if Rivas was still in California or had returned to Colorado. Torres said that he did not speak to Rivas on the phone but was to go to Rivas's residence after arriving in Colorado. Torres said he had seen Rivas three or four times and identified Rivas in a photo array.

On January 29, 2012, Rivas was arrested in Longmont, Colorado, based on an arrest warrant issued out of the District of Colorado for Conspiracy to Distribute Methamphetamine. A search warrant was subsequently executed at his residence and from the residence agents discovered a package containing approximately 500 grams of suspected methamphetamine and a separate package containing approximately 125 grams of suspected methamphetamine. These suspected drugs were field tested by a DEA agent and produced a positive reaction for the presence of methamphetamine. The suspected drugs are awaiting analysis at the DEA Western Laboratory.

Rivas subsequently agreed to cooperate with law enforcement. Rivas said that in 2010, he/she became involved in the distribution of methamphetamine through his/her friend, Alejandro Castro, aka Alex. Rivas identified a photograph of Alejandro Castro. Rivas said that he/she had gone to high school with Castro and later became reacquainted with Castro while

he/she was in California and visited Castro at his place of employment, Auto Zone. Rivas said that he/she traveled from Colorado to Castro's residence in Whittier, California, and picked up multiple pound quantities of methamphetamine. Rivas said that Castro's cousin and "right hand man" is known to Rivas only as “Crecencio.” Rivas said that in February 2011, when Rigoberto Reynaga Torres was stopped in Utah with several pounds of methamphetamine, methamphetamine was coming from Alejandro Castro and was destined for Rivas in Colorado. Rivas said that following Torres’s arrest, Rivas and Castro stopped dealing methamphetamine together but they continued to stay in contact and Rivas continued to pay Castro for the seized drugs. Rivas said that he still owed Castro $2,000 for the drugs seized in Utah. Rivas said that following the stop of Torres, Rivas began dealing more directly with Crecencio than with Castro.

Rivas said that he last purchased methamphetamine from Crecencio in January 2012, when he acquired approximately three pounds of methamphetamine. Rivas said that his drug debt to Crecencio is $14,000. Rivas also stated that the package (containing approximately 500 grams of methamphetamine) seized from his residence came from Crecencio in January 2012.

On February 26, 2012, Rivas had a telephone conversation with Alejandro Castro. This telephone call was recorded by DEA. Rivas asked Castro if he knew anything about “Rigo” (Rigoberto Torres). Castro said he did not know anything but was told that they gave him 3 ½ years. Castro told Rivas that the sentence would be reduced by 55 days per year because “it is a Federal thing.” Rivas said that every time he thinks about paying Castro, he thinks about Torres. Rivas reminded Castro that he had had that debt with Castro since “back then.” Castro said they completed a “whole year anniversary” that they had not worked. Castro’s statement about the anniversary was consistent with Rivas’s statement that they had not conducted any drug transactions since the stop and arrest of Torres in February 2011.

On March 25, 2012, at approximately 9:42 pm, Rivas called Crecencio at telephone number 310-692-6760. This conversation was not recorded due to technical problems, but the existence of this call was confirmed by toll records. According to Rivas, they discussed getting more drugs and paying Crecencio the money owed. The conversation then turned to Rigoberto Torres. Crecencio said he and a female cousin dropped “the car” off to “Rigo.” Rivas asked where Crecencio gave Torres the car, and Crecencio said the car was at Torres's apartment. Rivas asked if Crecencio thought Torres "talked," meaning cooperated with law enforcement. Crecencio said he did not think so. Crecencio told Rivas that "Alex" (Alejandro CASTRO) sent Crecencio to Torres’s mother's house to give her money for Torres's “books,” meaning his account at the jail.

On March 1, 2012, Rivas had a telephone conversation with Alejandro Castro. This telephone call was recorded by DEA. At the direction of your affiant, Rivas told Castro that he wanted to deposit something for him and asked Castro to send Rivas the account number. Castro provided JP Morgan Chase, account #3881912303, in the name Alejandro Castro. On March 2, 2012, your affiant went to a Chase Bank branch in Colorado and deposited $2,000 into account #3881912303 as the remainder of the drug debt Rivas owed to Castro.

On March 30, 2012, Rivas called Crecencio at (310) 692-6760. This telephone call was recorded by DEA. Rivas told Crecencio that he was transporting the money owed to Crecencio, but he had been stopped by police in Utah and the money was seized. Rivas said that he was concerned about “Rigo” (Rigoberto Torres) and that the police questioned him about him. Crecencio said that if “Rigo” said something, they would be “screwed.”

On February 16, 2012, US Magistrate Judge Michael Watanabe signed an order authorizing the collection of GPS Precision Location data for (310) 692-6760, a phone used by Cresencio. On April 18, 2012, agents tracked the GPS location data to 85929 Avenida Raylynn, Coachella, California. Shortly after agents arrived, they observed a gray GMC Sierra, with California registration 8S44370, leaving the residence. This vehicle is registered to Alejandro CASTRO. The movement of the vehicle corresponded to the data received for (310) 692-6760. At approximately 6:00 am, a Riverside Sheriff's Office Deputy conducted a traffic stop for illegal tint on the windows. The driver was identified as Crescencio Felipe Castro Nieblas. Castro Nieblas was released at the scene.

The facts set forth above are not all of the facts known to your affiant, but are sufficient to establish probable cause to believe

1) that that the subject bank account contain proceeds traceable to violations of Title 21 U.S.C. §§ 841 and 846, and the property is thus subject to forfeiture pursuant to Title 21 U.S.C. § 881(a)(6); and
2) that Alejandro Castro and Crescencio Felipe Castro Nieblas conspired with each other and with others both known and unknown to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 USC § 846.

Accordingly, your affiant seeks a civil seizure warrant pursuant to Title 21 U.S.C. § 881(b) for JP Morgan Chase, account #3881912303, in the name Alejandro Castro, and a criminal complaint charging Alejandro Castro and Crescencio Felipe Castro Nieblas with conspiracy to

distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 USC § 846.

This Application for search warrants was reviewed and is submitted by Barbara Skalla Assistant United States Attorney.

I, DAVID L. CROSBY, a Special Agent of the DEA being duly sworn according to law, hereby states that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

Dated this 3rd day of May, 2012 at Denver, Colorado

*s/David L. Crosby*
DAVID L. CROSBY
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

SUBSCRIBED AND SWORN to before me this 3RD day of May, 2012

UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT OF COLORADO
KATHLEEN M. TAFOYA